JS-6  'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANGELICA LIMCACO,

         Plaintiff,

   v.

STEVE WYNN, et al.,

         Defendants.

Case No. 2:20-cv-11372-RSWL-MAAx

**ORDER re: Defendants' Motions to Dismiss First Amended Complaint [57, 58, 61, 91, 108]**

    Currently before the Court are five motions to dismiss Plaintiff Angelica Limcaco's ("Plaintiff" or "Limcaco") First Amended Complaint ("FAC") filed by Defendants Wynn Resorts, Ltd. ("Wynn Resorts") and Matthew Maddox ("Maddox") [57], Defendant Steve Wynn ("Wynn") [58], Defendant Kimmarie Sinatra ("Sinatra") [61], Defendant Barbara Buckley ("Buckley") [91], and Defendant ML Strategies, LLC ("ML Strategies") [108]. Having reviewed all papers submitted pertaining to the Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:** the

1

Court **GRANTS with prejudice** Wynn Resorts and Maddox's motion; **GRANTS with prejudice** Buckley's motion; **GRANTS with prejudice** Wynn's motion; **GRANTS with prejudice** Sinatra's motion; and **GRANTS with prejudice** ML Strategies's motion.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff alleges the following in her FAC:

Around July 2005, Plaintiff reported to human resources that a coworker at Wynn Las Vegas casino and resort ("WLV") had been raped and impregnated by Steve Wynn. See FAC ¶ 40, ECF No. 50. Plaintiff's superior, Doreen Whennen ("Whennen"), threatened Plaintiff to remain silent about the reported rape allegations ("Limcaco Sexual Assault Report"). Id. Still, Whennen demanded that Plaintiff disclose her other allegations of sexual assault against Wynn. Id. ¶ 44. But, when Plaintiff did so, Whennen took no action. Id. After Plaintiff met with then-president and Chief Operating Officer of WLV, Andrew Pascal, to express concerns about the allegations, Plaintiff was terminated, unable to find work, and forced into bankruptcy. Id. The coworker's abrupt removal without explanation, Plaintiff's termination, and WLV's intimidation tactics induced Plaintiff to fear for her safety if she came forward with her sexual assault allegations. Id. ¶ 45.

Defendants Wynn Resorts (owner of WLV), Steve Wynn (former Wynn Resorts Chief Executive Officer), Matthew

Maddox (Wynn Resorts executive), and Kimmarie Sinatra (former Wynn Resorts General Counsel and executive) (referred to collectively as the "Wynn Defendants") sought to protect their interests in gaming licenses by withholding the Limcaco Sexual Assault Report from the Nevada Gaming Control Board ("NGCB").  Id. ¶ 45.  In a bid to open the Encore Boston Harbor resort and casino, Defendants also withheld the Limcaco Sexual Assault Report from the Massachusetts Gaming Commission ("MGC") in violation of the Massachusetts Gaming Act ("MGA").  Id. ¶ 3.

Further, Defendants did not disclose to the MCG information regarding the involvement of convicted felon Charles Lightbody in the gaming license process.  Id. ¶¶ 3-4.  The Wynn Defendants partnered with FBT Everett Realty, LLC ("FBT"), of which Lightbody was part owner, in the sale of land for the casino project. Id. ¶ 56. The Wynn Defendants also hired ML Strategies, a political consulting firm, to assist their acquisition of gaming licenses in Massachusetts for the Wynn Boston Casino.  Id. ¶ 39.  ML Strategies knew of and/or discussed Lightbody's role in the FBT and Wynn Resorts land deal.  Id.  Thus, in its representative capacity for Wynn Defendants, ML Strategies violated the MGA by failing to disclose to the MGC (1) information about Lightbody and (2) information about the Limcaco Sexual Assault Report.  Id.

The Wynn Defendants and ML Strategies also withheld

1  the Limcaco Sexual Assault Report from litigation with
2  Wynn Resorts' co-founder and former Vice Chairman Kazuo
3  Okada regarding alleged improper payments and the
4  pursuit of a casino in Macau.  Id. ¶ 6-7.  The Wynn
5  Defendants and ML Strategies still did not disclose the
6  Limcaco Sexual Assault Report to the MGC in 2016 after
7  the sexual assault allegations became a central issue in
8  the Okada litigation.  Id. ¶ 7.

9      The existence of the Limcaco Sexual Assault Report
10 became public following the publication of an article by
11 the Wall Street Journal on or around January 26, 2018.
12 Id. ¶ 9.  Both the NGBC and MGC began investigations
13 into the matter, threatening the Massachusetts casino
14 license and the $2.6 billion project.  Id.  ML
15 Strategies assisted Defendant Maddox and other parties
16 with preserving the gaming licenses in the wake of the
17 MGC investigations.  Id.

18     Limcaco filed suit ("Nevada Action") in the United
19 States District Court for the District of Nevada
20 ("Nevada District Court") on September 4, 2018, alleging
21 wrongful termination in violation of Title VII of the
22 Civil Rights Act of 1964 against WLV and Steve Wynn.
23 Id. ¶ 11.  Elayna Youchah ("Youchah") represented WLV in
24 the Nevada Action.  Id. ¶ 14.  District Judge Miranda Du
25 presided over the Nevada Action and Magistrate George
26 Foley served as Magistrate Judge.  Id.

27     The outcome of the Nevada Action was directly tied
28 to the Wynn Defendants' illicit efforts to protect their

Massachusetts casino license.  Id. ¶ 24.  On December 3, 2018, a merit selection panel was designated to fill the vacancy of Magistrate Foley, who retired before the conclusion of the Nevada Action.  Id. ¶ 87(m)(i).  On the panel sat Defendant Buckley, executive director of the Legal Aid Center of Southern Nevada ("LACSN").  Id. ¶ 38.  LACSN receives funding from Wynn Resorts.  Id. The Wynn Defendants intended to use their payments to LACSN to influence Defendant Buckley in elevating Youchah to the court, where WLV's motion to dismiss was pending, thereby influencing the outcome of the Nevada Action.  Id. ¶ 87(m)(vi).

All filings in the Nevada Action had been made by Youchah until April 2, 2019, when a colleague of Youchah's filed a notice of appearance and a reply brief without Youchah's name.  Id. ¶ 87(h).  Youchah had at that point been selected to fill the magistrate judge vacancy.  Id. at 46 n.21.  The court granted WLV's motion to dismiss on April 18, 2019.  Id. ¶ 87(m)(iii). Although Judge Du may not have known of the Wynn Defendants and Buckley's coordination, she rendered a favorable decision to Youchah, who may have had "greater credibility" as Judge Du's new colleague on the court. Id. ¶ 87(m)(vi).  On April 30, 2019, MGC allowed Wynn Resorts to keep its gaming license, but it fined Wynn Resorts $35,000,000 and installed the firm Miller and Chevalier to monitor Maddox.  Id. ¶ 87(j).  On May 17, 2019, Youchah was publicly announced as the replacement

for Magistrate Foley in the Nevada District Court.  Id.
¶ 87(l).

Following the dismissal of the Nevada Action, Wynn
Resorts sponsored LACSN's annual awards event on
December 13, 2019.  Id. ¶ 87(m)(v).  Sinatra was part of
a group that donated an additional $250,000 to LACSN on
November 8, 2019.  Id.  While Wynn Resorts' donations
between April 2019 and April 2020 were originally set
forth in a 2017 Memorandum of Understanding ("MOU"), the
MOU provided that Wynn Resorts could revoke the
donations at its sole discretion.  Id.

The Wynn Defendants' payments to influence the
outcome of the Nevada Action represent just one instance
of a pattern of illegal conduct.  Id. ¶ 26.  In addition
to concealing the Limcaco Sexual Assault Report and
involvement of Lightbody, Steve Wynn was involved in
Elliot Broidy's[1] conspiracy to violate the Foreign
Agents Registration Act, id. ¶ 27, and Maddox remains
under investigation by the MGC and Miller and Chevalier
for improper conduct, id. ¶ 28.

**B.   Procedural Background**

On December 16, 2020, Plaintiff initiated this
civil Racketeer Influenced and Corrupt Organizations Act
("RICO") action [1] against the Wynn Defendants.  On
March 15, 2021, Plaintiff filed her FAC [50], adding a

---

[1] According to the FAC, Elliot Broidy was a "top Republican National Convention fundraiser" with whom Wynn conspired with. FAC ¶ 27.

cause of action, as well as adding Buckley and ML Strategies (collectively, together with the Wynn Defendants, "Defendants").

In brief, the FAC alleges that the Wynn Defendants made conditional payments to a public official, Defendant Buckley, in an effort to influence the Nevada Action, which arose out of Plaintiff's prior report of a rape allegation against Defendant Wynn. See FAC ¶ 1, ECF No. 50. The FAC further alleges that this conduct coincided with Defendants' efforts to save casino gaming licenses in Massachusetts that were at risk of being revoked after the Wall Street Journal published an article reporting numerous allegations of sexual misconduct by Defendant Wynn and publicly revealed the details of Plaintiff's prior report. See id. ¶¶ 1, 9. Plaintiff brings four causes of action in the FAC: (1) violation of RICO, 18 U.S.C. § 1962(c) (against all Defendants); (2) violation of RICO, 18 U.S.C. § 1962(c) (against Defendants Wynn, Maddox, Sinatra, Buckley, and ML Strategies); (3) conspiracy to violate RICO, 18 U.S.C. § 1962(d) (against all Defendants); and (4) independent action in equity to set aside and vacate judgment due to extrinsic fraud or mistake (against all Defendants). See generally id.

All Defendants filed motions to dismiss the FAC [57, 58, 61, 91, 108]. Defendants Wynn [59], Sinatra [61], and Buckley [91] also joined Defendants Wynn Resorts and Maddox's motion to dismiss [57]. Defendant

ML Strategies filed a joinder [107] to all other Defendants' motions to dismiss.

On May 3, 2021, the Court granted [105] Defendants' Motion for a Finding of Good Cause to Continue Fed. R. Civ. P. 16(b) Scheduling Conference [69] and continued the Scheduling Conference to August 24, 2021.

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

Federal Rule of Civil Procedure ("Rule") 12(b)(2) provides a basis for moving to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once personal jurisdiction is challenged, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. See, e.g., Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008); Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where the motion is "based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts" to survive dismissal. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).

"The plaintiff cannot 'simply rest on the bare allegations of [the] complaint,' but uncontroverted allegations in the complaint must be taken as true." Id. (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)). If, however, the defendant presents evidence contradicting the allegations in the complaint, the plaintiff must "come

forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Barantsevich v. VTB Bank, 954 F. Supp. 2d 972, 982 (C.D. Cal. 2013) (quoting Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986)). "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction[.]" AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1207 (9th Cir. 2020). Although the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," factual disputes must be resolved in the plaintiff's favor. Mavrix Photo, 647 F.3d at 1223 (citations omitted).

"Personal jurisdiction over [a nonresident] defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process." AMA Multimedia, 970 F.3d at 1207 (citing Pebble Beach, 453 F.3d at 1154). Where no applicable federal statute governs personal jurisdiction, "the district court applies the law of the state in which the court sits." Mavrix Photo, 647 F.3d at 1223. "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' our inquiry centers on whether exercising jurisdiction comports with due process." Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting Daimler AG v. Bauman, 571 U.S. 117, 125 (2014)); see Cal. Code Civ. Proc. § 410.10.

Constitutional due process requires that a

nonresident defendant have "certain minimum contacts
with [the forum state] such that the maintenance of the
suit does not offend 'traditional notions of fair play
and substantial justice.'" Goodyear Dunlop Tires
Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011)
(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316
(1945)).  Depending on the nature and extent of the
defendant's contacts with the forum state, a court may
exercise either general or specific jurisdiction.
Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S.
Ct. 1773, 1780 (2017).  General jurisdiction exists when
the defendant's contacts "are so continuous and
systematic as to render [it] essentially at home in the
forum State." Daimler, 571 U.S. at 139 (internal
quotation marks and citation omitted).  By contrast,
specific jurisdiction exists when the suit "aris[es] out
of or relate[s] to the defendant's contacts with the
forum." Id. at 127 (citations omitted).

**B.   Rule 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6)
allows a party to move for dismissal on one or more
claims if a pleading fails to state a claim upon which
relief can be granted.  Fed. R. Civ. P. 12(b)(6).
Pursuant to Rule 8(a), a complaint must contain "a short
and plain statement of the claim showing that the
pleader is entitled to relief" to give the defendant
"fair notice of what the . . . claim is and the grounds
upon which it rests." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007); see also Fed. R. Civ. P. 8(a). Dismissal is proper "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While a complaint need not contain detailed factual allegations, it must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. The plaintiff must allege enough facts "to raise a right to relief above the speculative level." Id. In evaluating a Rule 12(b)(6) motion, a court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff. Great Minds v. Off. Depot, Inc., 945 F.3d 1106, 1109 (9th Cir. 2019). A court may generally consider only "the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014).

///

# III.   DISCUSSION

## A.   <u>Judicial Notice</u>

### 1.   <u>Wynn Resorts & Maddox's Requests for Judicial Notice</u>

Before turning to the merits of Defendants' motions, the Court first addresses the numerous requests for judicial notice made in connection with the present motions.  A court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Matters of public record may be judicially noticed, but disputed facts contained therein may not.  <u>Khoja v. Orexigen Therapeutics, Inc.</u>, 899 F.3d 988, 999 (9th Cir. 2018).  "[A]ccuracy is only part of the inquiry under Rule 201(b)."  <u>Id.</u>  "A court must also consider—and identify—which fact or facts it is noticing from" the documents.  <u>Id.</u>

Wynn Resorts and Maddox filed two requests seeking judicial notice of the following twelve documents: (1) the order dismissing Plaintiff's claims in the Nevada Action, dated April 18, 2019 ("Exhibit A"); (2) the docket in the Nevada Action, as of February 22, 2021 ("Exhibit B"); (3) Plaintiff's complaint filed in <u>Limcaco v. Wynn Las Vegas, LLC, et al.</u>, Eighth Judicial District Court, Clark County, Nevada, Case No. A-19-

796060-C ("Plaintiff's State Case"), dated June 4, 2019 ("Exhibit C"); (4) Plaintiff's amended supplemental brief filed in Limcaco v. Wynn Las Vegas, LLC, et al., U.S. Court of Appeals for the Ninth Circuit, Case No. 19-15949, dated April 14, 2020 ("Exhibit D"); (5) the order staying Plaintiff's State Case, dated October 17, 2019 ("Exhibit E"); (6) the press release from the Nevada District Court announcing the appointment of Elayna J. Youchah as a U.S. Magistrate Judge, dated May 17, 2019 ("Exhibit F"); (7) the MGC's decision and order regarding its investigation of Wynn MA, LLC and Wynn Resorts, Ltd, dated April 30, 2019 ("Exhibit G"); (8) the order appointing a merit selection panel to make a recommendation for the replacement of Magistrate Judge Carl W. Hoffman, Jr. and Magistrate Judge George W. Foley, Jr., dated December 3, 2018 ("Exhibit H"); (9) Plaintiff's petition for a writ of certiorari in Limcaco v. Wynn Las Vegas, LLC, et al., U.S. Supreme Court, Case No. 20-949, dated March 22, 2021 ("Exhibit I"); (10) an excerpt of the order list denying certiorari in Limcaco v. Wynn Las Vegas, LLC, et al., U.S. Supreme Court, Case No. 20-949, dated March 22, 2021 ("Exhibit J"); (11) Wynn Resorts, Ltd.'s environmental, social, and governance report for the year 2017 ("Exhibit K"); and (12) a press release titled "Wynn Resorts Issues 2017 Global Sustainability Report," dated May 22, 2018 ("Exhibit L").  See generally Wynn Resorts & Maddox's Req. for Judicial Notice, ECF No. 57-

2; Wynn Resorts & Maddox's Suppl. Req. for Judicial Notice, ECF No. 74-1.

Exhibits A through E, I, and J are court filings and records in related proceedings and thus properly subject to judicial notice.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court documents).  The Court takes judicial notice of the existence of these proceedings, the dates of filing, the Plaintiff's claims, and the courts' dispositions.  See Exs. A-E, ECF Nos. 57-3 to -7; Exs. K-L, ECF Nos. 74-2 to -3.  The Court does not, however, take judicial notice of these documents for the truth of the matters asserted therein.  See Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001).

Exhibits F and H are also susceptible to judicial notice because, as official documents from the Nevada District Court, they are not subject to reasonable dispute.  See Dehoog v. Anheuser-Busch InBev SA/NV, 899 F.3d 758, 763 n.5 (9th Cir. 2018) (taking judicial notice of "government documents, court filings, press releases, and undisputed matters of public record").  The Court notices that Youchah's appointment as a U.S. Magistrate Judge was announced on May 17, 2019, and that she was to assume the position on August 6, 2019.  See Ex. F, ECF No. 57-8.  The Court also notices the fact that the Chief Judge of the Nevada District Court appointed nine members to serve on the merit selection

1  panel.  <u>See</u> Ex. H, ECF No. 57-11.  These facts "can be
2  accurately and readily determined" from the press
3  release and order, and Plaintiff does not dispute their
4  veracity.  Fed. R. Evid. 201(b).

5      Accordingly, Wynn Resorts & Maddox's requests for
6  judicial notice are **GRANTED** as to Exhibits A, B, C, D,
7  E, F, H, I, and J.  The Court **DENIES** the requests for
8  judicial notice as to Exhibits G, K, and L because they
9  are not necessary to the resolution of Defendants'
10  motions to dismiss the FAC.

11      2.  <u>Plaintiff's Requests for Judicial Notice</u>
12      Plaintiff filed nine requests for judicial notice.
13  The first five requests were filed before the conclusion
14  of briefing on the present motions.  Plaintiff then
15  filed three more requests.  Following the third,
16  Defendants objected to the later-filed requests for
17  judicial notice on the grounds that (1) the documents
18  are not relevant to Defendants' motions or Plaintiff's
19  allegations, (2) their contents are not judicially
20  noticeable, and (3) Plaintiff's requests for judicial
21  notice are effectively improper sur-replies.  See
22  generally Defs.' Objs. to Pl.'s Reqs. for Judicial
23  Notice, Dkt. Nos. 117, 122, 126, ECF No. 127.  Plaintiff
24  filed a reply to Defendants' objections, arguing that
25  her requests are proper and the documents are relevant.
26  See generally Reply Brief in Supp. of Pl.'s Reqs. for
27  Judicial Notice, ECF No. 128.  Doubling down, Plaintiff
28  thereafter filed her ninth request for judicial notice.

15

i.   *Plaintiff's Later-Filed Requests for Judicial Notice*

The Court does not take judicial notice of the seventeen documents identified in Plaintiff's later-filed requests.  <u>See generally</u> Pl.'s Req. for Judicial Notice re Defs.' MTDs and Mot. to Stay Disc., ECF No. 117; Pl.'s Req. for Judicial Notice re Defs.' MTDs, ECF No. 122; Pl.'s Req. for Judicial Notice re Defs.' MTDs, ECF No. 126; Pl.'s Req. for Judicial Notice re Defs.' MTDs, ECF No. 129.  All but five of these documents were available before the close of briefing and even before the operative FAC was filed.  The Court sees no reason why Plaintiff could not have discovered and included any pertinent information from those documents in her oppositions.  Although they do not directly respond to Defendants' reply briefs, Plaintiff's requests for judicial notice contain argument—specifically aimed at establishing open-ended continuity—such that they could be construed as improper sur-replies or at least as attempts to bolster her FAC.  <u>See</u> L.R. 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply.").

Moreover, assuming they were properly filed, the documents of which Plaintiff seeks judicial notice would not necessarily be as helpful as she claims.  <u>See</u> <u>Khoja</u>, 899 F.3d at 999 ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially

noticeable for its truth."); <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." (internal quotation marks and citation omitted)); <u>Gerritsen v. Warner Bros. Ent. Inc.</u>, 112 F. Supp. 3d 1011, 1029–30 (C.D. Cal. 2015) (declining to take judicial notice of newspaper articles and press releases because "it [was] irrelevant, for purposes of defendants' motion to dismiss, that the information in the press releases and news articles was publicly available").

Finally, the documents are not pertinent or necessary to the Court's resolution of the present motions, and the Court does not rely upon them.  On this basis, the Court therefore **DENIES** Plaintiff's four later-filed requests for judicial notice.  Defendants' objections are **OVERRULED**.

The Court next considers Plaintiff's first five requests for judicial notice.

ii. *Plaintiff's First Five Requests for Judicial Notice*

In her first request, Plaintiff asks the Court to take judicial notice of: (1) Sinatra's separation agreement with Wynn Resorts that was filed with the SEC, stating that Sinatra "agree[d] to cooperate with [Wynn Resorts]" through December 31, 2018; (2) the docket from

the Nevada Action, as of February 22, 2021; (3) the order appointing a merit selection panel that included Peterson and Buckley to make a recommendation for the replacement of vacancies in the Nevada District Court, dated October 2, 2018; (4) an announcement from the Clark County Bar Association's website that the deadline to submit applications to fill Magistrate Judge Foley's vacancy was November 30, 2018; (5) the order appointing a merit selection panel that included Buckley to make a recommendation for the replacement of Magistrate Judge Carl W. Hoffman, Jr. and Magistrate Judge George W. Foley, Jr., dated December 3, 2018; (6) the order appointing a merit selection panel that included Peterson and Buckley to make a recommendation regarding vacancies, dated January 2, 2019; (7) the press release announcing Youchah's selection to fill the vacancy of Magistrate Judge Foley, dated May 17, 2019; (8) the "Case Query" page of the Nevada Action; (9) Buckley's biography; (10) Sinatra's biography; and (11) LACSN's Form 990 for the year 2019.  <u>See generally</u> Pl.'s First Req. for Judicial Notice, ECF No. 87.

Nearly all of these documents are properly subject to judicial notice.  <u>See</u> <u>Dehoog</u>, 899 F.3d 758, 763 n.5 (9th Cir. 2018) (taking judicial notice of "government documents, court filings, press releases, and undisputed matters of public record").  The Court notes that the source of Buckley's and Sinatra's biographies are not clearly ascertainable.  But Defendants do not object to

them, and the facts Plaintiff seek to be judicially noticed—Buckley's and Sinatra's roles in LACSN—are not disputed.  Accordingly, the Court **GRANTS** Plaintiff's first request for judicial notice.

The Court notes that all of the facts Plaintiff asks the Court to judicially notice are already alleged in the FAC—for example, the fact that Buckley and Peterson, Wynn's counsel, were named on the same merit selection panel on January 2, 2019, FAC ¶ 87(m)(iii); Youchah filed motions and reply briefs as lead counsel WLV in February and March 2019, FAC ¶ 87(f); Youchah's colleague filed a notice of appearance on April 2, 2019, FAC ¶ 20; the Nevada District Court granted WLV's motion to dismiss without leave to amend on April 18, 2019, FAC ¶ 114; Youchah's selection to fill the vacancy of Magistrate Judge Foley was publicly announced on May 17, 2019, FAC ¶ 19; Youchah's representation of WLV ended on May 28, 2019, FAC ¶ 87(l); Buckley is the executive director of LACSN, FAC ¶ 1; Sinatra is on the board of directors of LACSN, FAC ¶ 22; and LACSN's Form 990 indicates that LACSN paid Buckley approximately $238,100 in 2019, FAC ¶ 38.  The allegations in the FAC are taken as true in resolving Defendants' motions to dismiss, and it is unnecessary to judicially notice these facts.

In her second request, Plaintiff seeks judicial notice of ten Wall Street Journal articles from January 2018 to April 2019 regarding sexual assault allegations against Wynn and the MGC's investigation.  See generally

Pl.'s Second Req. for Judicial Notice, ECF No. 88. Again, most of the highlighted facts are already alleged in the FAC or are reasonable inferences that can be drawn from its allegations.  Other highlighted statements are imbued with speculation or subject to varying interpretations.  See, e.g., Ex. E, ECF No.88-5 ("In the past week, company executives appeared to be trying to mount a defensive strategy against the allegations through a series of highly unusual moves."). Defendants do not oppose Plaintiff's request, however, so the Court takes judicial notice of these articles for the limited purpose of establishing what was publicly known or reported at the time.  See Von Saher, 592 F.3d at 960 (explaining that courts may take judicial notice of news articles and other publications "to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true"); Khoja, 899 F.3d at 1000 ("It is improper to judicially notice a [document] when the substance of the [document] is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes." (internal quotation marks and citation omitted)).  Plaintiff's second request for judicial notice is **GRANTED**, but the Court does not judicially notice the statements contained in the news articles for their truth.

///

///

20

In her third request, Plaintiff requests judicial notice of certain documents related to the MGC's investigation, including: (1) an investigative report regarding the suitability of Wynn MA, LLC and others, dated March 15, 2019; (2) a notice of hearing dated March 26, 2019 regarding the April 2019 hearing to determine the suitability of Wynn MA, LLC and others; (3) an excerpt from the transcript of the hearing on April 4, 2019; and (4) a press release from the MGC, dated April 30, 2019, which states that Maddox will be fined and monitored but the relevant qualifiers will retain their casino licenses. <u>See generally</u> Pl.'s Third Req. for Judicial Notice, ECF No. 89. Although the investigative report may be judicially noticeable as the public report of a governmental body, Plaintiff does not make clear what facts it seeks judicial notice of from the 209-page document. Additionally, the occurrence and outcome of the MGC hearing is already alleged in the FAC. FAC ¶¶ 15, 87(g). Further, the Court does not and need not rely on these documents in its decision on the present motions. The Court therefore **DENIES** Plaintiff's third request for judicial notice.

In her fourth request, Plaintiff seeks judicial notice of court filings in other proceedings, specifically a motion to intervene and a complaint. <u>See generally</u> Pl.'s Fourth Req. for Judicial Notice, ECF No. 90. Plaintiff appears to rely on the truth of the allegations contained in these filings to support her

allegations of prior criminal investigations involving Defendants and gaming licenses.  See id. at 3:8-10 (describing the filings as "verifiable evidence").  This could be problematic because, although court filings and other matters of public record generally are judicially noticeable, disputed facts asserted therein are not. Khoja, 899 F.3d at 999 (9th Cir. 2018).  And typically, allegations in motions and complaints are disputed. Here, however, the allegations indicate other criminal investigations already referenced in the FAC, and Defendants do not oppose this request.  The Court **GRANTS** Plaintiff's fourth request for judicial notice, but it does not judicially notice any disputed facts within the court filings.

Finally, in her fifth request, Plaintiff requests judicial notice of a Wall Street Journal article titled "Steve Wynn May Face Justice Department Action for Role in China's Push to Expel Business," dated May 26, 2021. See generally Pl.'s First Req. for Judicial Notice re Defs.' MTDs, ECF No. 114.  As with the other Wall Street Journal articles, the Court **GRANTS** this request and takes judicial notice of this article as indicative of what was in the public realm at the time, but not for the veracity of its contents.  See Von Saher, 592 F.3d at 960.

///

///

///

3.   <u>ML Strategies's Requests for Judicial Notice</u>

ML Strategies filed two requests for judicial notice of the following documents published on the MGC's website: (1) MGC's "Instructions for Application for a Gaming License-RFA Phase 1 Application"; and (2) MGC's "Phase I Suitability Decision" for Wynn MA, LLC.   <u>See generally</u> ML Strategies's Req. for Judicial Notice in Supp. of MTD, ECF No. 108-2; ML Strategies's Req. for Judicial Notice in Supp. of Reply, ECF No. 115-1. Although they may be judicially noticeable, <u>see Daniels-Hall v. Nat'l Educ. Ass'n</u>, 629 F.3d 992, 998-99 (9th Cir. 2010), the Court declines to take judicial notice of these documents because they are unnecessary to the determination of the present motions and the Court does not rely on them.   ML Stategies's requests for judicial notice are **DENIED.**

**B.   Defendant Buckley's MTD FAC [91]**

Buckley moves to dismiss the FAC for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff argues that RICO's nationwide service of process provision, 18 U.S.C. § 1965(b), confers personal jurisdiction over Buckley and that Buckley is otherwise subject to specific jurisdiction in California.   Pl.'s Opp'n to Buckley's MTD 5:10-7:27, ECF No. 101.   The Court concludes that it lacks personal jurisdiction over Buckley under either theory and does not address Buckley's arguments advanced under Rule 12(b)(6).

1    1.   Jurisdiction Under RICO

2         Congress authorizes nationwide service of process

3    upon RICO defendants if "the ends of justice" require

4    it.  18 U.S.C. § 1965(b).  "Under 18 U.S.C. § 1965(b), a

5    court may exercise personal jurisdiction over non-

6    resident participants in an alleged RICO conspiracy,

7    even if those parties would otherwise not be amenable to

8    jurisdiction in that court."  Rupert v. Bond, 68 F.

9    Supp. 3d 1142, 1161 (N.D. Cal. 2014).  "[T]he right to

10   nationwide service in RICO suits is not unlimited,"

11   however, and "merely naming persons in a RICO complaint

12   does not, in itself, make them subject to section

13   1965(b)'s nationwide service provisions."  Butcher's

14   Union Loc. No. 498, United Food & Com. Workers v. SDC

15   Inv., Inc., 788 F.2d 535, 539 (9th Cir. 1986).  "In

16   order to establish personal jurisdiction under Section

17   1965(b), Plaintiff[] must show: (1) the Court has

18   personal jurisdiction over at least one of the

19   participants in the action; (2) there is no other

20   district in which a court will have personal

21   jurisdiction over the alleged co-conspirators; and (3)

22   the facts show a single nationwide RICO conspiracy

23   exists."  Gilbert v. Bank of Am., No. C 13-01171 JSW,

24   2014 WL 4748494, at *4 (N.D. Cal. Sept. 23, 2014)

25   (internal quotation marks omitted) (citing Butcher's

26   Union, 788 F.2d at 539).

27        Buckley challenges the second and third prongs,

28   arguing that: (1) Plaintiff makes no effort to show that

there is no other district in which a court would have personal jurisdiction over all Defendants; and (2) Plaintiff fails to allege a multidistrict conspiracy that encompasses Buckley.  Buckley's MTD 7:16-8:12.  The Court agrees with Buckley that, at a minimum, Plaintiff has not established the second prong.

Plaintiff concedes that Wynn, Maddox, Sinatra, Buckley, and Wynn Resorts could be subject to jurisdiction in Nevada but argues that the FAC's allegations do not establish that all Defendants would be amenable to jurisdiction in Nevada or elsewhere. Pl.'s Opp'n to Buckley's MTD 5:4-7.  To support her contention, Plaintiff points to allegations that ML Strategies "is a Delaware limited liability company registered to do business in the Commonwealth/State of Massachusetts," that it "was hired by the Wynn Defendants to assist in acquiring gaming licenses in Massachusetts," and that ML Strategies's alleged predicate acts primarily involve misrepresentations to the MGC.  Id. at 6:9-14 (citing FAC ¶¶ 39, 96(a)). Based on these allegations, Plaintiff concludes "there is no indication that Nevada has jurisdiction over ML Strategies."  Id. at 6:14-15.  Plaintiff further asserts that "there is no indication that Massachusetts has jurisdiction over Buckley, as the allegations pertaining to her surround conduct in Nevada (and aimed at [Plaintiff])."  Id. at 6:15-17 (citing FAC ¶ 96(c)-(e)). ///

Plaintiff has not met its burden to show that there is no other district in which a court would have personal jurisdiction over all of the alleged co-conspirators.  Indeed, the allegations in the FAC indicate that all Defendants—except perhaps the most recently added ML Strategies—would be subject to jurisdiction in Nevada.  Plaintiff's conclusory assertion that "there is no indication" that ML Strategies is amenable to jurisdiction in Nevada (or Buckley, in Massachusetts) is insufficient to establish jurisdiction under § 1965(b).  See Huntair, Inc. v. Gladstone, 774 F. Supp. 2d 1035, 1039–40 (N.D. Cal. 2011) (finding the plaintiffs' statement that they "are not aware of any other district in which a court would have personal jurisdiction over all of the defendants" was "conclusory" and "insufficient to meet [the plaintiffs'] burden to demonstrate that jurisdiction under § 1965(b) would be appropriate"); see also Barantsevich v. VTB Bank, 954 F. Supp. 2d 972, 989–90 (C.D. Cal. 2013) ("While it is not clear that there is another district that could exercise jurisdiction over all defendants, plaintiff has the burden of showing affirmatively that this is the case.").  Because Plaintiff fails to allege sufficient facts showing that no other district court could exercise jurisdiction over all Defendants, she may not rely on § 1965(b) to supply a basis for personal jurisdiction.  See, e.g., Wegner v. Wells Fargo Bank, N.A., 791 F. App'x 669, 671 (9th Cir.

1    2020); <u>Elofson v. Bivens</u>, 774 F. App'x 409, 410 (9th

2    Cir. 2019), <u>cert. denied</u>, 140 S. Ct. 903 (2020).

3         2.  <u>Specific Jurisdiction</u>

4         "There are three requirements for a court to

5    exercise specific jurisdiction over a nonresident

6    defendant: (1) the defendant must either purposefully

7    direct his activities toward the forum or purposefully

8    avail[ ] himself of the privileges of conducting

9    activities in the forum; (2) the claim must be one which

10   arises out of or relates to the defendant's forum-

11   related activities; and (3) the exercise of jurisdiction

12   must comport with fair play and substantial justice,

13   i.e. it must be reasonable." <u>Axiom Foods, Inc. v.</u>

14   <u>Acerchem Int'l, Inc.</u>, 874 F.3d 1064, 1068 (9th Cir.

15   2017) (internal quotation marks and citation omitted).

16   The plaintiff bears the burden of establishing the first

17   two prongs of the test. <u>Id.</u> "If the plaintiff meets

18   that burden, 'the burden then shifts to the defendant to

19   "present a compelling case" that the exercise of

20   jurisdiction would not be reasonable.'" <u>Id.</u> at 1068-69

21   (quoting <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374

22   F.3d 797, 802 (9th Cir. 2004)).

23        Because Plaintiff's claims sound in tort, the Court

24   uses the "effects" test to analyze the purposeful

25   direction prong. <u>See</u> <u>Calder v. Jones</u>, 465 U.S. 783

26   (1984). The "effects" test requires Plaintiff to show

27   that Buckley "(1) committed an intentional act, (2)

28   expressly aimed at the forum state, (3) causing harm

that [Buckley] knows is likely to be suffered in the forum state." Id. (citation omitted).

In this case, Plaintiff fails to satisfy the purposeful direction test because she does not show that Buckley committed any intentional acts expressly aimed at California.  Plaintiff argues that Buckley committed an intentional act—conspiring with the Wynn Defendants to elevate Youchah to a magistrate judge position—aimed at California because "the actions were directed at [Plaintiff], a California resident," and "the harm is felt in California" since Plaintiff is the aggrieved party.  Pl.'s Opp'n to Buckley's MTD 7:21-25.  But "mere injury to a forum resident is not a sufficient connection to the forum." Walden v. Fiore, 571 U.S. 277, 290 (2014).  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id.  The relevant conduct in this case took place in Nevada and Massachusetts, and Plaintiff's only allegations specific to Buckley are confined to Nevada.  The mere fact that Buckley's conduct allegedly affected Plaintiff, who has connections to California, does not subject Buckley to specific jurisdiction in California. See id. at 285, 291 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").  Accordingly, this Court lacks specific jurisdiction over Buckley.

///

In sum, Plaintiff establishes neither jurisdiction under RICO, 18 U.S.C. § 1965(b), nor specific jurisdiction over Buckley.  Plaintiff does not allege any other basis for personal jurisdiction over Buckley. The Court therefore **GRANTS** Buckley's motion to dismiss for lack of personal jurisdiction.

**C.   Defendants Wynn Resorts & Maddox's MTD FAC [57]**

Defendants Wynn Resorts and Maddox move to dismiss Plaintiff's claims on the grounds that: 1) they are barred by the affirmed dismissal of the Nevada Action; and 2) the RICO claims are substantively defective.  See Wynn Resorts & Maddox's MTD at 2:11-3:13.

1.   Dismissal of the Prior Nevada Action

Defendants contend that this action is an improper collateral attack on the prior judgment in the Nevada Action.  Id. at 16:22-23.  Defendants argue that Plaintiff's fourth cause of action confirms this because Plaintiff could have availed herself of Rule 60(b)(3) or otherwise moved to recuse the judge in the Nevada Action.  Id. at 16:22-17:10.  Defendants also argue that RICO cannot be used to avoid the preclusive effect of a prior judgment, and raise issues of res judicata and collateral estoppel.  Id. at 16:16-21.  The Court will examine these arguments in turn below.

///

///

///

///

i.   *Plaintiff's Fourth Cause of Action:*
     *Independent Action in Equity to Set Aside*
     *and Vacate Judgment*

Defendants argue that Plaintiff's fourth cause of action fails because "such a claim is available only when there is no adequate remedy at law."  Id. at 16:28-17:1.  According to Defendants, Plaintiff could have moved, in the Nevada District Court, for relief from judgment under Rule 60(b)(3) and for recusal under 28 U.S.C. § 144 if she believed that the judge in the Nevada Action could not impartially decide the Rule 60(b)(3) motion.  Id. at 17:2-15.

Rule 60(b) enumerates six grounds for a court, "[o]n motion and just terms," to relieve a party from a final judgment.  Fed. R. Civ. P. 60(b).  Motions under Rule 60(b)(1)-(3), which include those based on fraud or mistake, must be made "no more than a year after the entry of the judgment or order or the date of the proceeding."[2]  Fed. R. Civ. P. 60(c)(1).  This deadline has long passed, so Plaintiff cannot seek relief under a Rule 60(b)(3) motion.  But Rule 60 has an exception for fraud committed on the court, which provides that "[t]his rule does not limit a court's power to entertain an independent action to relieve a party from a

_____

[2]  Rule 60(b)(1)-(3) permits relief from a final judgment based on "mistake, inadvertence, surprise or excusable neglect"; "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; and "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," respectively.

judgment, order, or proceeding . . . or set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d). Such relief is not subject to the one-year time limit. United States v. Sierra Pac. Indus., Inc., 862 F.3d 1157, 1167 (9th Cir. 2017).

If, however, the fraud was known at the time of entry of judgment, relief for fraud on the court is unavailable. Id. at 1168-69 ("[R]elief is available for 'after-discovered fraud.'" (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244 (1944))). Although Defendants' argument suggests that Plaintiff had knowledge of the alleged conflict of interest prior to the dismissal of the Nevada Action, Plaintiff alleges that she did not become aware of it until February 2020—after the April 2019 dismissal of the Nevada Action—and promptly raised it in the Ninth Circuit. FAC ¶¶ 114-115; see Opp'n to Wynn Resorts & Maddox's MTD 9:28-10:6.

Even assuming that the alleged fraud was "after-discovered," Plaintiff's allegations nevertheless fail to state a claim for fraud on the court. An independent action in equity to set aside a judgment "should be available only to prevent a grave miscarriage of justice." United States v. Beggerly, 524 U.S. 38, 47 (1998); see also Sierra Pac. Indus., 862 F.3d at 1167 (indicating that showing fraud on the court requires more "than the lower showing required for relief under Rule 60(b)(3)"). The relevant inquiry is whether the fraudulent conduct "harmed the integrity of the judicial

process," not whether it "prejudiced the opposing party."  Sierra Pac. Indus., 862 F.3d at 1168 (quoting United States v. Est. of Stonehill, 660 F.3d 415, 444 (9th Cir. 2011)).  "Fraud on the court must be an intentional, material misrepresentation. . . [and] must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision."  Id. (internal quotation marks and citations omitted).  Additionally, the relevant misrepresentations must go "to the central issue in the case" and "affect the outcome of the case."  Id. (quoting Est. of Stonehill, 660 F.3d at 448, 452).

Here, Plaintiff alleges that WLV "took steps to elevate its[] lead counsel, Elayna Youchah, to take over the vacancy of the Magistrate who presided over the Nevada Action" while the Nevada Action was pending and after Youchah had filed a motion to dismiss, and these efforts were not disclosed to Plaintiff or to the court. FAC ¶ 115.  Plaintiff alleges that WLV and its parent company, Wynn Resorts, were in a conditional payment arrangement with Buckley, who was on the merit selection panel that selected Youchah.  Id. ¶ 116.  Plaintiff also alleges that subsequent donations were issued to Buckley and her foundation, LACSN, "which coincided with a decision dismissing the [Nevada Action]."  Id.  Plaintiff further alleges that the Wynn Defendants "attempted to secure a judgment against Plaintiff by defrauding the Nevada District Court" in an

"attempt[] to salvage their gaming licenses tied to a $2.6 billion casino project in Massachusetts." <u>Id.</u> ¶ 117.  According to Plaintiff, "[t]hese were deceptive actions that the Wynn Defendants took against the court and Plaintiff." <u>Id.</u>

These allegations fail to state a facially plausible claim of fraud on the court.  First, it is not clear that Defendants' conduct constitutes fraud.  <u>See</u> <u>Sierra Pac. Indus.</u>, 862 F.3d at 1168 ("[M]ere nondisclosure of evidence is typically not enough to constitute fraud on the court.").  Plaintiff cites no authority that Defendants had a duty to disclose their donations to LACSN for the merit selection panel's consideration of Youchah for a magistrate judgeship.[3] Second, Plaintiff does not plausibly allege that the non-disclosures were material to the outcome of the Nevada Action.  Relying on circumstantial allegations, Plaintiff asks the Court to infer that her Nevada Action would not have been dismissed on statute of limitations grounds.  But Plaintiff must first plead sufficient factual content to "make such an inference reasonable." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.  In short, it might be

---

[3] Plaintiff asks the Court to infer that the "conditional payment[s]" and "donations" were made to Buckley, rather than the non-profit LACSN.  <u>See, e.g.</u>, FAC ¶ 116.  In support of this proposition, Plaintiff points to her allegations that Buckley is the executive director of the LACSN and derives her salary from it, <u>see, e.g.</u>, <u>id.</u> ¶¶ 21, 38, and argues that "all inferences must be read in the light most favorable to [Plaintiff]," <u>see</u> Opp'n to Buckley's MTD 20:5-7.

"conceivable," but it is not "plausible," see Twombly, 550 U.S. at 570, that Defendants' allegedly fraudulent conduct "harmed the integrity of the judicial process," Sierra Pac. Indus., 862 F.3d at 1168.  See Iqbal, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" (quoting Twombly, 550 U.S. at 557)).  There is no reason to believe the Nevada District Court would have decided the case differently if Defendants had disclosed their donations, or if Defendant had never donated at all. Plaintiff's factual allegations, taken as true, are not sufficient to meet the "demanding standard" of a "grave miscarriage of justice," as required for an independent action in equity to set aside a judgment.  Beggerly, 524 U.S. at 47.  Plaintiff fails to plausibly allege that permitting an independent action to proceed would prevent a "grave miscarriage of justice"—particularly where the Ninth Circuit affirmed the Nevada District Court's decision and the Supreme Court denied Plaintiff's petition for writ of certiorari.

    Furthermore, the Court agrees with Defendants' contention that the proper recourse is "not to file an action in this district court seeking to overturn a judgment duly rendered in another district."  Wynn Resorts & Maddox's MTD 7:11-15.  "When a court entertains an independent action for relief from the

final order of another court, it interferes with and usurps the power of the rendering court just as much as it would if it were reviewing that court's equitable decree.  Although justice may occasionally demand that sort of interference, the identification of those rare situations is committed to the sound discretion of the district court."  <u>Treadaway v. Acad. of Motion Picture Arts & Scis.</u>, 783 F.2d 1418, 1422 (9th Cir. 1986). Given Plaintiff's failure to state a plausible claim, the Court does not consider this case one of those "rare" instances warranting, much less demanding, interference.  The interest of comity thus supports declining jurisdiction over Plaintiff's independent action in equity to set aside the judgment in the Nevada Action.

Accordingly, the Court **DISMISSES** Plaintiff's fourth cause of action.

ii. *Res Judicata*

Defendants argue that res judicata prevents Plaintiff from using RICO to relitigate her failed wrongful termination claim.  Wynn Resorts & Maddox's MTD 17:17-19.  The Court concludes that res judicata does not bar Plaintiff's RICO claims.

Because the allegedly preclusive decision was rendered by a federal court exercising federal-question jurisdiction, its preclusive effect is determined by federal law.  <u>Taylor v. Sturgell</u>, 553 U.S. 880, 891 (2008).  Res judicata, or claim preclusion, "bars a

party in successive litigation from pursuing claims that 'were raised or could have been raised in [a] prior action.'"  Media Rts. Techs., Inc. v. Microsoft Corp., 922 F.3d 1014, 1020 (9th Cir. 2019) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001)).  Res judicata applies when the prior action "(1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies."  Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005) (quoting Sidhu v. Flecto Co., 279 F.3d 896, 900 (9th Cir. 2002)).

In determining whether the prior action involved the same claim or cause of action, the Ninth Circuit considers four criteria: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions."  Media Rts. Techs., 922 F.3d at 1026 (quoting Mpoyo, 430 F.3d at 987).  Of these, "the common-nucleus criterion is the 'most important.'"  Id. at 1028 (quoting Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012)).  Courts employ a "transaction test to determine whether . . . two suits share a common nucleus of operative fact."  Id. at 1026 (quoting Mpoyo, 430

F.3d at 987).  "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together."  Id. at 1027 (quoting Mpoyo, 430 F.3d at 987).

Here, the common-nucleus criterion disfavors application of res judicata.  The present action and the Nevada Action do not arise from "the same transactional nucleus of facts."  To be sure, both cases involve similar facts related to Plaintiff's termination and Plaintiff prays, in part, for the same relief she sought in the Nevada Action—namely, damages for her allegedly unlawful termination.  But the Nevada Action centered on Plaintiff's termination from Wynn Resorts, whereas the present action is predicated on Defendants' alleged interference with the Nevada Action and other conduct allegedly intended to secure casino licenses in Massachusetts.  Compare Sidhu v. Flecto Co., 279 F.3d 896, 900 (9th Cir. 2002) (finding that two suits did not arise out the same transactional nucleus of facts where the first action was predicated on the plaintiff's layoff from work and the second action was predicated on the union's refusal to return the plaintiff to work), with Mpoyo, 430 F.3d at 987 (finding common-nucleus criterion satisfied where both actions related to events leading to the plaintiff's termination and the Title VII, FLSA, and FMLA claims would form a convenient trial unit).

1    Moreover, Plaintiff could not have raised, much
2  less conveniently tried, in the Nevada Action the
3  allegedly improper influence on, and dismissal of, that
4  earlier suit for the simple reason that such dismissal
5  had not yet occurred.  See Media Rts. Techs., 922 F.3d
6  at 1021 ("[C]laim preclusion does not apply to claims
7  that were not in existence and could not have been sued
8  upon—*i.e.*, were not legally cognizable—when the
9  allegedly preclusive action was initiated."); Lucky
10  Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140
11  S. Ct. 1589, 1596 (2020) ("Claim preclusion generally
12  'does not bar claims that are predicated on events that
13  postdate the filing of the initial complaint.'" (quoting
14  Whole Woman's Health v. Hellerstedt, 136 S.Ct. 2292,
15  2305 (2016))).

16    The other criteria are not as clear cut.  The
17  second criterion—whether rights or interests established
18  in the prior judgment would be destroyed or impaired by
19  prosecution of the second action—is unhelpful here.
20  Although allowing Plaintiff to proceed with the instant
21  action may disrupt Defendants' freedom from liability as
22  established by the Nevada Action, this is not as
23  material to the analysis.  See United States v.
24  Liquidators of Eur. Fed. Credit Bank, 630 F.3d 1139,
25  1151 n.7 (9th Cir. 2011) ("Resolution of that factor
26  depends only on our conclusion about res judicata.").
27  Weighing this criterion too heavily would generally
28  preclude any independent action from setting aside a

judgment.  And, while the Court declines to entertain Plaintiff's independent action here, Rule 60(d) contemplates the availability of such actions where appropriate.

Next, Plaintiff insists that the third criterion—whether the same right has been infringed—is not satisfied because the Nevada Action involved Plaintiff's "right to be free from wrongful termination," while the present action involves her "right to be free from improper and criminal influence when litigating claims before a court."  Opp'n to Wynn Resorts and Maddox's MTD 12:8-12.  Yet, in the FAC, Plaintiff seeks the same damages sought in the Nevada Action and expounds a theory that presumes her right to redress for wrongful termination.  Finally, as to the fourth criterion which concerns whether the same evidence is presented in the two actions, Plaintiff's claims in the present action will involve evidence beyond what is required for claims brought in the Nevada Action, but Plaintiff will also need to present some of the same evidence to establish her damages.

Although the latter three criteria do not point to a conclusive outcome, the common-nucleus criterion counsels against claim preclusion.  The common-nucleus criterion is the "most important" and is generally considered "outcome-determinative."  Media Rts. Techs., 922 F.3d at 1028 (collecting cases).  On this basis, the Court concludes that the Plaintiff's RICO claims do not

1  involve the same claim or cause of action as the Nevada

2  Action, and res judicata does not apply to bar

3  Plaintiff's RICO claims.

4       iii. *Collateral Estoppel*

5       Defendants next argue that collateral estoppel bars

6  Plaintiff's claim, even if res judicata does not,

7  because Plaintiff raised its "central RICO theory" in a

8  supplemental brief to the Ninth Circuit, which rejected

9  it, and the Supreme Court denied Plaintiff's petition

10  for a writ of certiorari on the same grounds.  Wynn

11  Resort & Maddox's MTD 19:14-20:16.  Defendants contend

12  that the Ninth Circuit already considered and rejected

13  the following allegations, which form Plaintiff's theory

14  of injury in the present action: "(a) Youchah was under

15  consideration for a magistrate judge position at the

16  time of the dismissal order, and (b) Defendants had paid

17  hundreds of thousands of dollars to LACSN in an apparent

18  bid to elevate Youchah and influence the decision."  Id.

19  at 19:27-20:3.

20       "Issue preclusion, also known as collateral

21  estoppel, bars the relitigation of issues actually

22  adjudicated in previous litigation."  Janjua v. Neufeld,

23  933 F.3d 1061, 1065 (9th Cir. 2019) (internal quotation

24  marks and citation omitted).  Issue preclusion applies

25  where four conditions are met: "(1) the issue at stake

26  was identical in both proceedings; (2) the issue was

27  actually litigated and decided in the prior proceedings;

28  (3) there was a full and fair opportunity to litigate

1  the issue; and (4) the issue was necessary to decide the

2  merits."  Id. (citations omitted).

3      Here, there is a serious question as to whether the

4  fourth condition is met, such that the Court cannot

5  conclude issue preclusion applies.  Although the Ninth

6  Circuit stated that "the arguments raised in

7  [Plaintiff]'s supplemental brief lack merit," it

8  reasoned that "[Plaintiff's] 'newly discovered' evidence

9  does not reveal any error in judgment made by the

10  district court 'in the conclusion it reached upon

11  weighing the relevant factors.'"  Limcaco v. Wynn, 809

12  F. App'x 465, 467 (9th Cir. 2020) (citation omitted),

13  cert. denied sub nom. Limcaco v. Wynn Las Vegas, LLC,

14  141 S. Ct. 1688 (2021).  In other words, the Ninth

15  Circuit considered Plaintiff's allegations of improper

16  judicial influence in determining whether the Nevada

17  District Court had abused its discretion.  Arguably,

18  however, Plaintiff's allegations were either unnecessary

19  to the Ninth Circuit's decision or considered merely

20  incidentally, and therefore the Court cannot conclude

21  that issue preclusion applies.  See Resol Tr. Corp. v.

22  Keating, 186 F.3d 1110, 1115-16 (9th Cir. 1999).

23      Nevertheless, even though the Court cannot find

24  that issue preclusion applies, Plaintiff's claims fail

25  on the pleadings as discussed below.

26  ///

27  ///

28  ///

2.  <u>Sufficiency of the RICO Claims</u>

RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Plaintiff's first, second, and third causes of action are based on alleged RICO violations under 18 U.S.C. § 1962(c) and (d).  <u>See</u> FAC ¶¶ 88-111.

Section 1962(c), as relevant here, makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).

Section 1962(d) makes it separately "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  "[F]ailure to adequately plead a substantive violation of RICO precludes a claim for conspiracy" to violate RICO under § 1962(d).  <u>Howard v. Am. Online Inc.</u>, 208 F.3d 741, 751 (9th Cir. 2000).

Defendants assert that Plaintiff lacks RICO standing and Plaintiff's allegations are insufficient to state a claim under § 1962(c) and (d).  <u>See</u> Wynn Resorts & Maddox's MTD 10:1-16:10, 20:17-25:24.  The Court concludes that Plaintiff's lack of RICO standing requires dismissal of her RICO claims and need not reach Defendants' other arguments.

1    i. *RICO Standing*

2   "To allege civil RICO standing under 18 U.S.C.

3 § 1964(c), a plaintiff must show: (1) that his alleged

4 harm qualifies as injury to his business or property;

5 and (2) that his harm was 'by reason of' the RICO

6 violation." <u>Painters & Allied Trades Dist. Council 82</u>

7 <u>Health Care Fund v. Takeda Pharms. Co. Ltd.</u>, 943 F.3d

8 1243, 1248 (9th Cir. 2019) (internal quotation marks and

9 citation omitted), <u>cert. denied</u>, 141 S. Ct. 86, 207

10 (2020).  Defendants contend that Plaintiff fails to

11 satisfy either requirement.  <u>See</u> Wynn Resorts & Maddox's

12 MTD 10:1-16:10.

13   Not all injuries are compensable under RICO.  <u>See</u>

14 <u>RJR Nabisco, Inc. v. Eur. Cmty.</u>, 136 S. Ct. 2090, 2108

15 (2016) ("RICO's private cause of action [is cabined] to

16 particular kinds of injury—excluding, for example,

17 personal injuries.").  "The injury to business or

18 property must be a 'concrete financial loss, and not

19 mere injury to a valuable intangible property

20 interest.'" <u>Thomas v. Baca</u>, 308 F. App'x 87, 88 (9th

21 Cir. 2009) (citation omitted); <u>see also</u> <u>Canyon Cnty. v.</u>

22 <u>Syngenta Seeds, Inc.</u>, 519 F.3d 969, 975 (9th Cir. 2008).

23 Additionally, "[w]ithout a harm to a specific business

24 or property interest-a categorical inquiry typically

25 determined by reference to state law-there is no injury

26 to business or property within the meaning of RICO."

27 <u>Diaz v. Gates</u>, 420 F.3d 897, 900 (9th Cir. 2005) (en

28 banc) (per curiam).  To establish that an injury was "by

1   reason of" a RICO violation, "the plaintiff is required

2   to show that a RICO predicate offense 'not only was a

3   "but for" cause of his injury, but was the proximate

4   cause as well.'"  Hemi Grp., LLC v. City of New York,

5   559 U.S. 1, 9 (2010) (quoting Holmes v. Sec. Inv'r Prot.

6   Corp., 503 U.S. 258, 268 (1992)).

7                    a.  *Injury to Business or Property*

8        As to the injury requirement, Defendants argue that

9   "Plaintiff does not plausibly allege an injury to

10  business or property because Plaintiff was not denied

11  access to the courts," and any alleged harm is

12  "speculative and premised on the fact that she would

13  have succeeded in [the Nevada Action]."  Wynn Resorts &

14  Maddox's MTD 15:20-16:10.  Plaintiff asserts that she

15  "alleges a plausible injury to her business or property

16  because she alleges damages arising out of honest

17  services fraud."  Opp'n to Wynn Resorts & Maddox's MTD

18  8:15-16.  In Plaintiff's view, she was "deprived of the

19  recovery of her actual damages outlined in the Nevada

20  [Action]," which consist of $931,666.67 (based on her

21  salary), and "substantial expenses" incurred "in

22  connection with the Nevada [Action] and related

23  litigation," including attorney's fees.  Id. at 8:24-

24  9:5; FAC ¶¶ 98, 104, 110.

25       Plaintiff appears to conflate the actionable

26  injuries under honest services fraud and RICO.  The

27  honest services doctrine arises under the intangible

28  rights theory of damages.  See Skilling v. United

                              44

States, 561 U.S. 358, 400 (2010) ("[A]ctionable harm lay in the denial of that party's right to the offender's 'honest services.'").  The FAC asserts causes of action under civil RICO, however, and honest services fraud is merely an alleged predicate act.[4]  "[The Ninth Circuit] has specifically held . . . that the deprivation of honest services alone 'does not constitute concrete financial loss' for purposes of pleading RICO's statutory standing requirement."  Portfolio Invs. LLC v. First Sav. Bank Nw., 583 F. App'x 814, 816 (9th Cir. 2014) (quoting Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001)).  Plaintiff thus cannot simply rely on an intangible right to receive honest services and must still plead a cognizable RICO injury that occurred "by reason of" a RICO violation.  See Painters & Allied Trades, 943 F.3d at 1248.

Taking Plaintiff's allegations as true, the Court is presented with three bases upon which Plaintiff seeks to establish injury to her business or property: (1) the loss of opportunity to pursue her claims in the Nevada Action; (2) the damages she sought in the Nevada Action; and (3) the legal fees and other expenses she incurred in connection with the Nevada Action.  None of Plaintiff's alleged injuries meet RICO's standing

---

[4] The Ninth Circuit has not definitively stated that honest services fraud may serve as a predicate act.  See Portfolio Invs. LLC v. First Sav. Bank Nw., 583 F. App'x 814, 816 (9th Cir. 2014) (declining to reach the issue of "whether honest-services fraud can ever serve as a predicate RICO act").

1  requirement.

2          1. *Loss Of Opportunity to Pursue*

3              *Claims*

4       Plaintiff cannot claim injury based on the loss of

5  opportunity to pursue her claims in the Nevada Action

6  because she was not denied access to the courts.  See

7  Avalos v. Baca, 596 F.3d 583, 594 (9th Cir. 2010)

8  ("[E]ven if the right to a judicial proceeding is a

9  property right under California law, [the plaintiff]

10  suffered no 'harm' to that right because he was able to

11  file his claim . . . in the district court.").

12  Plaintiff not only litigated her claims in the Nevada

13  District Court, but also sought appellate review in the

14  Ninth Circuit and filed a petition for writ of

15  certiorari, which the Supreme Court denied.  To the

16  extent Plaintiff claims she was deprived of a fair

17  opportunity to litigate, that alleged injury fails to

18  meet the standing criteria because it is neither

19  concrete nor financial.

20          2.  *Damages in the Nevada Action*

21       Perhaps recognizing that her loss of the Nevada

22  Action cannot constitute a cognizable injury under RICO,

23  Plaintiff asserts that she "has been injured in her

24  business and property" because she "has been deprived of

25  the recovery of her actual damages outlined in the

26  Nevada [Action]"—specifically, $807,083.22—as stated in

27  her initial disclosures served upon the defendants in

28  that action.  The Court rejects this theory.

1    Plaintiff cannot turn an injury arising under an

2  intangible rights theory into a concrete financial loss

3  sufficient for RICO standing by presuming success in a

4  cause of action that has yet to be litigated on the

5  merits.  Plaintiff ignores the actual litigation of her

6  claims in the Nevada Action and claims the damages

7  sought in that matter as a business or property interest

8  in this civil RICO action.  Although "California law

9  recognizes a cause of action as a form of property," it

10 is entirely uncertain whether Plaintiff would have

11 prevailed in the Nevada Action if it had not been time-

12 barred.  See Thomas v. Baca, 308 F. App'x 87, 88 (9th

13 Cir. 2009) (rejecting alleged injury to the plaintiffs'

14 cause of action as insufficiently concrete to establish

15 RICO standing where it was unknown whether the

16 plaintiffs would prevail in the cause of action or

17 whether the defendants' conduct would alter the

18 outcome).  "Injury to business or property requires

19 tangible and concrete financial loss, rather than

20 speculative or uncertain harm."  Comm. to Protect our

21 Agric. Water v. Occidental Oil & Gas Corp., 235 F. Supp.

22 3d 1132, 1169 (E.D. Cal. 2017).  Recovery in a case,

23 particularly one alleged to have not been litigated on

24 the merits, is inherently speculative.[5]

25       [5] Put another way, the Court does not find Plaintiff's

26 theory of injury—that she has been injured in the entire amount
   of actual damages sought in the Nevada Action, which was

27 dismissed at the motion to dismiss stage—to be plausible.  See
   Iqbal, 556 U.S. at 679 ("Determining whether a complaint states a

28 plausible claim for relief . . . [is] a context-specific task

1    Moreover, notwithstanding the questionable
2   legitimacy of claiming the deprivation of a right to
3   litigate and concurrently seeking recovery without
4   exercising that right, the Ninth Circuit has indicated
5   that standing cannot be established when the alleged
6   injury results from wrongful termination not caused by
7   predicate RICO acts.  See Reddy v. Litton Indus., Inc.,
8   912 F.2d 291, 294 (9th Cir. 1990) (holding that the
9   plaintiff "lacks standing to sue under § 1962(c) because
10  the injury he suffered was the result of his alleged
11  wrongful termination and was not caused by predicate
12  RICO acts").

13                  3.  *Legal Fees*

14    Nor can Plaintiff establish RICO injury based on
15  the legal fees and other expenses she incurred in
16  connection with the Nevada Action.  The Ninth Circuit
17  generally has not recognized legal fees as a valid
18  injury to business or property under RICO.  Thomas, 308
19  F. App'x at 88 ("This court has not recognized the
20  incurment of legal fees as an injury cognizable under
21  RICO, and we decline to do so here."); see also Ogden v.
22  Wells Fargo Bank, N.A., No. CV 14-3579 DMG (SH), 2015 WL
23  13413390, at *2 (C.D. Cal. Feb. 20, 2015) (collecting
24  cases).  Plaintiff offers no argument or citations to
25  support a contrary view.[6]

26  _____
    that requires the reviewing court to draw on its judicial
27  experience and common sense.").

28       [6] Even were the Court to conclude that legal fees qualify as
    cognizable injury under RICO, Plaintiff's FAC fails to satisfy

                              48

1    In sum, Plaintiff fails to establish RICO standing

2    in that she does not allege a cognizable injury.

3            b.   *Injury "By Reason of" a RICO Violation*

4    While Plaintiff lacks RICO standing on the basis of

5    injury alone, the Court nevertheless addresses the

6    second element of RICO standing—whether Plaintiff's

7    injury was "by reason of" a RICO violation.

8    As articulated, an injury is "by reason of" a RICO

9    violation if "a RICO predicate offense 'not only was a

10   "but for" cause of [the] injury, but was the proximate

11   cause as well.'" Hemi Grp., 559 U.S. at 9 (quoting

12   Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268

13   (1992)).  "Proximate cause for RICO purposes . . .

14   should be evaluated in light of its common-law

15   foundations; proximate cause thus requires 'some direct

16   relation between the injury asserted and the injurious

17   conduct alleged.'"  Id. (citation omitted).  "A link

18   that is 'too remote,' 'purely contingent,' or

19   'indirec[t]' is insufficient."  Id.  Here, Plaintiff can

20   the causation inquiry required for RICO standing. Courts have
21   found proximate cause where a plaintiff is "forced to incur"
     significant legal fees and expenses, but that is not the case
22   here since Plaintiff voluntarily chose to pursue this litigation.
     Compare City of Almaty v. Khrapunov, 956 F.3d 1129, 1133 (9th
23   Cir. 2020) (finding no proximate cause where the plaintiff did
     not show "that it was forced to spend its money or that it was
24   otherwise shortchanged by Defendants' actions"), with Harmoni,
     914 F.3d at 652 (finding proximate cause where the plaintiffs
25   were "forced to incur significant expenses responding to the
     administrative review because refusing to respond was not a
26   viable option").  "RICO doesn't provide for the recovery of
     losses caused by self-inflicted wounds."  Bryant v. Mattel, Inc.,
27   No. CV 04-9049 DOC RNBX, 2010 WL 3705668, at *15 (C.D. Cal. Aug.
     2, 2010) (rejecting claimed injury based on incurred attorneys'
28   fees and costs for a forensic auditor where the auditor was
     appointed at the counter-claimant's request).

1  show neither but-for nor proximate causation to

2  establish RICO standing.

3      Turning first to but-for causation, the Court notes

4  that Defendants' alleged undue influence is not the only

5  cause of the Nevada Action's dismissal.  The Nevada

6  District Court dismissed the case because the statute of

7  limitations had run.  The Court thus has no occasion to

8  believe the Nevada Action was dismissed for any other

9  reason than on the procedural grounds subsequently

10 affirmed by the Ninth Circuit.  See Limcaco v. Wynn, 809

11 F. App'x 465, 466-67 (9th Cir. 2020).

12     Second, Plaintiff cannot show proximate causation

13 to establish RICO standing.  Even with the most generous

14 reading, the FAC's attempted connection of Plaintiff's

15 injury to Defendants' alleged actions cannot be

16 characterized as anything but indirect.  According to

17 Plaintiff, Wynn Resorts made conditional payments to

18 LACSN, a nonprofit run by Buckley, who was thereby

19 influenced to persuade the merit selection panel to

20 elevate Youchah to fill the vacancy of the magistrate

21 judge in the Nevada Action.  FAC ¶¶ 20-24.  Plaintiff

22 alleges that, around March and April 2019, Youchah was

23 selected for the magistrate position, the LACSN received

24 a payment, the Nevada Action was dismissed, and the MGC

25 rendered a decision allowing the Wynn Defendants to

26 retain their gaming licenses in Massachusetts.  Id. ¶

27 96(c).  Plaintiff points to this timeline as well as

28 other circumstantial evidence, including additional

conditional payments made to the LACSN, to support proximate causation.  See Pl's Opp'n to Wynn Resorts & Maddox's MTD 7:13-8:4.

Defendants argue, and the Court agrees, that Plaintiff's theory depends on an attenuated chain of causation that requires numerous implausibly speculative assumptions to link the LACSN payments to Plaintiff's alleged injury.  Wynn Resorts & Maddox's MTD 7:13-8:4. Specifically, Plaintiff's theory of causation involves at least the following steps: (1) in August 2017, Wynn Resorts agreed to make a series of five payments of $100,000, which were revocable in Wynn Resorts' discretion, FAC ¶ 37; (2) in September 2018, Plaintiff filed her complaint in the Nevada Action, id. ¶ 82; (3) in December 2018, the Nevada District Court appointed a nine-member merit selection panel regarding the vacancies for two magistrate judge positions and Buckley is placed on the panel, id. ¶ 87(d); (4) in March or April 2019, the nine-member merit selection panel that included Buckley recommended Youchah's appointment, id. ¶ 20; and (5) in April 2019, the Nevada Action was dismissed, and the LACSN received its scheduled donation from Wynn Resorts, id. ¶ 96(c), Ex. A.  In short, Plaintiff's theory "is anything but straightforward," given the multiple intervening steps in the causal chain between the alleged injurious conduct and Plaintiff's alleged injury.  See Hemi Grp., 559 U.S. at 15; see also Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461

(2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."). Moreover, as Defendants note, Plaintiff's "theory of liability rests on the independent actions of third and even fourth parties." Wynn Resorts & Maddox's MTD 14:4-5 (quoting Hemi Grp., 559 U.S. at 15).

Plaintiff attempts to resist this conclusion by analogizing to Bieter Co. v. Blomquist, 987 F.2d 1319 (8th Cir 1993). See Pl's Opp'n to Wynn Resorts & Maddox's MTD 6:16-8:4. Plaintiff argues that honest services fraud can cause proximate harm to business or property and insists that, like the circumstances in Bieter, the relevant events all occurred around the same month. But Plaintiff's reliance on this out-of-circuit decision is unavailing. On the issue of proximate cause, the Bieter court concluded that "[a] finding that bribery of a councilmember proximately caused a plaintiff's injury can . . . rest on evidence of that individual's influence over the proceedings." Bieter, 987 F.2d at 1327. Notably absent in the present action are any allegations supporting Plaintiff's conclusory assertion of improper influence over the Nevada Action.

Taking Plaintiff's allegations of a cascading chain of events as true, starting with Wynn Resorts' pledge to donate to LACSN approximately two years before the dismissal of the Nevada Action, Plaintiff stops short of

alleging causation and instead leaves it to the Court to fill in the blank.  Plaintiff draws a correlation between Youchah's elevation to the magistrate judge position and the Nevada judge's rendering a favorable decision to Youchah's client, but Plaintiff makes no factual allegations as to how Youchah's new role affected the disposition of the case.  Despite Plaintiff's allegation that she "has been deprived on the recovery of her actual damages outlined in the Nevada [Action]" as a "direct and proximate result of Defendants' racketeering activities," FAC ¶¶ 98, 104, 110, Plaintiff does not plead "sufficient factual matter" to permit the Court to draw a "reasonable inference" of proximate causation.  See Iqbal, 556 U.S. at 678.  "[T]he Court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Khoja, 899 F.3d at 1008 (quoting In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008)).

The closest Plaintiff comes to alleging a causal connection between the alleged corrupt elevation of the magistrate judge and dismissal of the Nevada Action is the suggestion that Youchah carried "greater credibility" as a defense attorney-turned-magistrate. See FAC ¶ 24 ("Judge Du, even if unaware of the RICO Defendants['] coordination, rendered a decision favorable to Youchah (who was then Judge Du's new colleague and someone with presumably 'greater

credibility' due to her new position as a Judge in the
same Court).")  If any other connective tissue exists
between Defendant's donations and the dismissal of the
Nevada Action, Plaintiff does not allege it.  Further,
Plaintiff presents no authority to support the
allegation that Defendants' conferral of greater
credibility in their defense attorney constitutes undue
influence rising to the level of depriving her of the
opportunity to litigate on the merits.

In sum, accepting the allegations in the FAC as
true, and reading them in the light most favorable to
Plaintiff, the Court concludes that Plaintiff has not
plausibly alleged an injury "by reason of" a RICO
violation as required to establish RICO standing.
Plaintiff fails to allege facts showing a sufficient
causal nexus between Defendants' alleged unlawful
conduct and her alleged loss of the actual damages
sought in the Nevada Action.  Plaintiff's RICO claims
thus fail to state a claim for relief.

3.   Leave to Amend

Plaintiff has already amended her 66-page FAC as of
right following the benefit of previewing Defendants'
challenges to her complaint in their initial motions to
dismiss, including the deficiencies in her allegations
regarding injury to business or property and causation.
None of the arguments in her five oppositions and nine
requests for judicial notice indicate that she would be
able to cure the fatal flaw of lacking standing to

assert her RICO claims.  Nor has Plaintiff proposed any other allegations or theories that could cure this deficiency.

Moreover, in the interest of comity, the Court declines to further entertain Plaintiff's independent action in equity to vacate the judgment in the Nevada Action.  Because the Court concludes that the deficiencies identified in this Order cannot be cured by further amendment, the Court **GRANTS** Wynn Resorts and Maddox's motion to dismiss the FAC **with prejudice**.  See Pac. Recovery Sols. v. United Behav. Health, 508 F. Supp. 3d 606, 619 (N.D. Cal. 2020) (dismissing the plaintiffs' substantive RICO and RICO conspiracy claims with prejudice for lack of RICO standing).

**D.** **Defendant Wynn's MTD FAC [58], Defendant Sinatra's MTD FAC [61], and Defendant ML Strategies's MTD FAC [108]**

In their separate motions, Defendants Wynn, Sinatra, and ML Strategies argue that—in addition to the defects identified in Wynn Resort and Maddox's motion— the FAC fails to state a plausible claim against each of them because the allegations specific to them are also deficient.  Plaintiff's failure to establish RICO standing warrants dismissal of her RICO claims against all Defendants.  In light of the Court's resolution of Wynn Resorts and Maddox's motion, which all other Defendants joined, Defendants Wynn's, Sinatra's, and ML Strategies's motions to dismiss the FAC are **GRANTED.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### IV.   CONCLUSION

Based on the foregoing, Wynn Resorts and Maddox's motion to dismiss the FAC is **GRANTED with prejudice** for failure to state a claim.  Buckley's motion to dismiss the FAC is **GRANTED with prejudice** for lack of personal jurisdiction.  The remaining motions to dismiss the FAC filed by Wynn, Sinatra, and ML Strategies are **GRANTED with prejudice** in light of the Court's resolution of Wynn Resorts and Maddox's motion.  All Defendants and claims are dismissed.

**IT IS SO ORDERED.**

DATED:   October 29, 2021


_____
/s/ Ronald S.W. Lew
Honorable Ronald S.W. Lew
Senior United States District Judge

56